Warsaw, February 24th, 2016

**Jerzy Mendelka**

**J.M. Inwest Sp. z o.o.**

**ul. Bychowska 57**

**00-536 Warsaw**

<u>Address for service:</u>

**ul. Grzybowska 45**

**00-844 Warsaw**



To the Honorable Judge Sean H. Lane

United States Bankruptcy Court

Southern District of New York

One Bowling Green New York

New York 10004-1408

Adversarial procedure no. 15-08228 (SHL)

Reference no. 13-22748 (RDD)

COMPLEMENTARY LETTER TO THE RESPONSE TO THE SUIT

concerning a forged loan agreement with a promissory note of April 14th, 2009

and a correction to exhibit D to the response to the suit

Dear Judge,

First of all, I would like to correct the content of one of the exhibits, attached to the statement of claim – a table presenting bank transferred, marked with letter „D" („exhibit D"), which lists transfers made from company Ryna Capital Inc. to company J.M. Inwest Sp. z o.o. in the period from 2007 until 2009. It should be pointed out that in the table under concern, in the

1

column "title", in points 2 to 23, the loan agreement number subject to transfers made in this period contained an error. Therefore, it should be clearly underlined that all of the bank transfers were made in association with the loan agreement no. 21/PL/2006 of December 18th, 2006, which served as a basis for the loan granted by Ryna Capital Inc. (the lender) to J.M. Inwest Sp. z o.o. (the borrower) in the amount of USD 30.000.000, which, in accordance with § 1 item 3 of the agreement was designated for financing of the investment project, consisting of construction of a building designated as a hotel, offices or apartments up to 29 above-ground storeys and an underground parking lot (4th stage of the Centrum Żelazna complex) on the land plot no. 30/3 in cadastral district 6-01-04 located in Warsaw. As the loan was granted in tranches (§ 1 item 4 of the agreement), each of the transfers, for which confirmations have been attached to the response to the suit (exhibits D1-D23), was made in association with performance of the loan agreement no. 21/PL/2006 of December 18th, 2006. At the same time, it should be pointed out that in the transfer confirmations, the transfer titles were provided properly („UM POZ 21PL2006"), therefore, the correction is applicable solely to the table presenting the list of transfers (exhibit D).

In addition to the above, it should also be pointed out that in the list of transfers under concern, the date of transfer no. 14 is also erroneous – one zero is missing, and the date has been recorded as „12-03-208" instead of „12-03-2008".

In association with the above, attached hereby is a proper table presenting the list of transfers made.

Moreover, within the framework of complementing of the legal position presented in the response to the suit and in further letters of the defendant, addressed to the Court, I would like to make the following statement.

With reference to the loan agreement, allegedly concluded on April 14th, 2009 between J.M. Inwest Sp. z o.o. and Innovest Holding LLC and the alleged promissory note, associated with the agreement, I hereby sustain all of the statements made in clause IV of the response to the suit, at the same time pointing out that **despite numerous requests of the party for presentation of the original agreement, such document has not been presented until today, which may only prove that such agreement has never been concluded by J.M. Inwest Sp. z o.o. or by Ryna Capital Inc., nor has it ever been signed by Jerzy Mendelka.** At the same time, it should be stated that a <u>copy</u> of the alleged loan agreement of April 14th, 2009 was presented for the first time to Jerzy Mendelka in association with the

suit of Roman Śledziejowski, concerning his personal bankruptcy. When questioned in association with these proceedings, Jerzy Mendelka answered numerous questions and he was presented with many documents, including a copy of the „agreement", referred to above. **It should be underlined that Jerzy Mendelka stated categorically that the photocopy of the signature, contained in the photocopy of the alleged agreement, looked like his signature; however, Jerzy Mendelka had never signed such agreement and thus the original agreement obviously could not exist.** As it has been mentioned above, the original document has not been presented, despite the demand made in this regard by Jerzy Mendelka. Taking into account the circumstances, described above and mentioned in the response to the suit, <u>it should be underlined once again that the loan agreement with the alleged promissory note is artificial, and the signature of Jerzy Mendelka was photocopied (forged).</u> **A situation, in which the official receiver – Marianne T. O'Toole – uses an artificial agreement with a forged signature of Jerzy Mendelka within the framework of proceedings conducted against Jerzy Mendelka and his companies – should be regarded to be absolutely unacceptable.** An act of this kind is not only illegal, but also entirely contradictory to the principles of ethics, which should be followed by an official receiver, in particular, due to the fact that Jerzy Mendelka and companies controlled by him are creditors, and not debtors of Roman Śledziejowski and companies controlled by him. <u>It should also be taken into account that the artificial agreement under concern is also to be used by PENSON in association with the compensation proceedings against PENSON, initiated by Jerzy Mendelka, while negligence committed by this institution made it possible for Roman Śledziejowski to withdraw funds in the amount of about USD 17 000 000 from bank accounts without the consent or knowledge of Jerzy Mendelka.</u> Therefore, it should be noted that due to use of the artificial loan agreement with a forged signature of Jerzy Mendelka by subsequent entities increases the risk of the court being misled and the victims, that is, Jerzy Mendelka and companies controlled by him, suffering from further damages.

It is also necessary to provide a number of remarks with regard to the alleged „promissory note", which is to constitute a part of the loan agreement of April 14th, 2009. The photocopy presented by the plaintiff is not a promissory note, but an artificial, forged document, which, as a result of use of the term "promissory note" in the title of the agreement, is to give an impression that the document is a promissory note. It was not without a reason that a typical promissory note form was used, while the signature of Jerzy Mendelka was provided on a separate page – making it easier to create an artificial document by simply copying a signature

3

of Jerzy Mendelka, made on a different document and place such signature on the last, separate page of the agreement. <u>It should also be underlined that the photocopy attached to the statement of claim fails to meet such basic requirements, defined for promissory notes, as indication of the first name and surname of the issuer of the promissory note, promise of unconditional payment of the indicated amount of money by using a clear statement, such as „I hereby state that I owe" or „I hereby state that I am indebted", designation of the place of issue of the promissory note, designation of the place and deadline for payment of the promissory note, a legible signature of the issuer of the promissory note.</u> In fact, the photocopy attached to the statement of claim lacks characteristics, which would allow for identification of the issuer of the promissory note. Moreover, due to the fact that the original document constituting the alleged loan agreement with the promissory note of April 14th, 2009, has not been presented, under the circumstances of the case under concern, there is no source document, which could be examined by experts with regard to handwriting. In this case, the burden of proof is imposed on the plaintiff, and not on the defendant, and the plaintiff has failed to meet its obligations in this regard, being unable to present the original of the alleged document, which the plaintiff refers to.

Moreover, it should be pointed out that the sham nature of the loan agreement and the promissory note of April 14th, 2009, is indicated also by other circumstances – first of all, lack of a business objective, which could serve as a basis for conclusion of such agreement, and the overall <u>contradiction between the content and the objective of the alleged loan agreement and the agreement of September 7th, 2012, signed in person by Jerzy Mendelka and Roman Śledziejowski, which indicates clearly that Roman Śledziejowski has recognized his debt to Jerzy Mendelka for the amount of approximately USD 17.000.000</u>. If it was proper to consider that the loan agreement of April 14th, 2009 was not an artificial agreement and it was, in fact, concluded, in such case, conclusion of the agreement of September 7th, 2012, would make no sense. It is necessary to underline here to logical cause and effect relationship, leading to conclusion of an agreement of September 7th, 2012. According to the undisputed mail correspondence, attached to the response to the claim (exhibit V), in early September of 2012, when Jerzy Mendelka was staying in New York, it was Jerzy Mendelka, who made efforts to meet with Roman Śledziejowski and clarify all circumstances of the case. In particular, it should be noted that the electronic mails exchanged in the period between September 4th and 7th, 2012, indicate that Roman Śledziejowski avoided a meeting with Jerzy Mendelka, or met with him at times, which prevented overall clarification of the case, for

instance, checking whether the funds of Jerzy Mendelka were really kept in the bank account of PENSON. In order to secure properly his interests, Jerzy Mendelka addressed a lawyer's office, which formulated more than ten questions to Roman Śledziejowski, who replied to them only partially. The e-mail correspondence under concern was aimed at preparation of a notarial deed, on the basis of which Roman Śledziejowski and the companies controlled by him were to recognize the debt and commit themselves jointly to settle all of their liabilities to Jerzy Mendelka and the companies controlled by him. The draft of this act was to contain bank account numbers for settlement purposes. As a result of a delay by Roman Śledziejowski, finally, there was no time to conclude the notarial deed; however, on the day of departure of Jerzy Mendelka from New York, Roman Śledziejowski met with Jerzy Mendelka at the West Inn hotel, where he voluntarily and without the presence of any lawyers, prepared an *"agreement preceding conclusion of the proper act"* (exhibit U to the response to the claim). Witnesses during the meeting of Jerzy Mendelka and Roman Śledziejowski were Konrad Kujawski and Henryk Stark. <u>Both Konrad Kujawski and Henryk Stark can confirm that Jerzy Mendelka came to New York in order to actively make a claim for return of his money.</u> **Jerzy Mendelka and companies controlled by him have been and still are the creditor, and not the debtor to Roman Śledziejowski and the companies controlled by him. Neither in the agreement of September 7th, 2012, nor in the electronic mail messages exchanged between the parties, there is no mention of any loan agreement of April 14th, 2009, although it is obvious that had such agreement been concluded, it would have been at least a subject of discussions between the parties prior to conclusion of the Agreement of September 7th, 2012.** It should be underlined that in the situation, in which conclusion of the loan agreement of April 14th, 2009, had really taken place, and Jerzy Mendelka or companies controlled by him were a debtor to Roman Śledziejowski or companies controlled by them, the events of September 2012 would not have probably taken place, and Roman Śledziejowski would not have to conclude the agreement of September 7th, 2012, in which he recognized the debt in the amount of approximately USD 17.000.000 without any reference to the alleged debt of Jerzy Mendelka or companies controlled by him. As there is no doubt with regard to the validity and authenticity of this agreement, it is obvious that the alleged loan agreement of April 14th, 2009, was never signed by Jerzy Mendelka. **It should also be underlined that this agreement is also clearly artificial and unreasonable in the context of transfers made by J.M. Property Sp. z o. o. Sp. k. to the account of PENSON on 02.07.2009 r. (USD 3.000.000), 23.12.2010 (USD 2.500.000) and 29.12.2010 (USD 2.000.000), listed in the statement constituting exhibit L to the response**

5

**to the claim.** If Jerzy Mendelka really needed additional funds for the construction of JM Tower, these transfers would never have been made. In fact, there was no such need, and the sources of financing of JM Tower were specified in detail in clause II of the response to the claim (loan agreement between J.M. Inwest Sp. z o.o. and Ryna Capital, loans incurred from PKO BP).

**Due to the above, without any doubt, the loan agreement and the promissory note of April 14th, 2009 is artificial and, as such, cannot serve as evidence in the proceedings under concern.** Therefore, use of this agreement by the official receiver is obviously illegal, which should be taken into account by the Court.

*JERZY MENDELKA*

*[signature]*

# Exhibit D – 24 pages

| L.P. | OD KOGO | KWOTA | WALUTA | DATA | DO KOGO | TYTUŁEM |
|---|---|---|---|---|---|---|
| 2007 ||||||||
| 1 | RYNA | 999 961,00 | USD | 31-01-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 2 | RYNA | 999 985,00 | USD | 12-02-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 3 | RYNA | 999 985,00 | USD | 26-02-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 4 | RYNA | 999 985,00 | USD | 09-03-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 5 | RYNA | 499 985,00 | USD | 02-04-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 6 | RYNA | 499 985,00 | USD | 20-04-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 7 | RYNA | 249 985,00 | USD | 31-05-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
|   | RYNA | 699 985,00 | USD | 31-05-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 8 | RYNA | 499 985,00 | USD | 25-06-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 9 | RYNA | 999 985,00 | USD | 29-06-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 10 | RYNA | 999 985,00 | USD | 25-07-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 11 | RYNA | 999 985,00 | USD | 07-09-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 12 | RYNA | 999 985,00 | USD | 30-11-2007 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 2008 |||||||
| 13 | RYNA | 999 985,00 | USD | 30-01-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 14 | RYNA | 999 961,00 | USD | 12-03-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 15 | RYNA | 999 961,00 | USD | 15-04-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 16 | RYNA | 6 499 985,00 | USD | 08-05-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 17 | RYNA | 999 985,00 | USD | 07-07-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 18 | RYNA | 499 961,00 | USD | 02-09-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 19 | RYNA | 499 961,00 | USD | 30-09-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 20 | RYNA | 1 049 897,09 | USD | 30-10-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 21 | RYNA | 499 961,00 | USD | 12-12-2008 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 2009 |||||||
| 22 | RYNA | 499 961,00 | USD | 12-01-2009 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |
| 23 | RYNA | 499 985,00 | USD | 19-06-2009 | J.M. INWEST | UMOWA POŻYCZKI 21PL2006 |

RAZEM:    24 499 384,09    USD

Warsaw, February 11th, 2016

Honorable Sean H. Lane
United States Bankruptcy Court
Southern District of New York
One Bowling Green New York
New York 10004-1408

Case No.: 15-08228 (SHL)

Dear Sir,

In connection with the hearing held on February 19th, 2016, I would like to justify my absence with bad health condition, of which I notified the Court in my previous written submissions. However, I request that the Court notifies me of the dates of subsequent hearings. So far, the requests to stop unlawful activities of the Receiver in Bankruptcy have been ineffective and, therefore, I have decided to appear before the Court during the next hearing scheduled in May in order to clarify this problem in person.

JERZY MENDELKA